**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George BROADWAY, Defendant-Appellant.**

**No. 72-2122.**

United States Court of Appeals, Fifth Circuit.

May 14, 1973.

George Slover, Jr. (Court-appointed), Roy L. Merrill, Jr., Dallas, Tex., for defendant-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before DYER, SIMPSON and MORGAN, Circuit Judges.

SIMPSON, Circuit Judge:

George Broadway appeals from his conviction and sentence to three years confinement under a single count[1] which charged him with transporting and causing to be transported in interstate commerce a falsely made and forged security in violation of Title 18, U.S.C. Section 2314. Several points of claimed error are raised on appeal, one of which we find meritorious, requiring reversal of the judgment of conviction. We conclude that the trial judge committed reversible error when he permitted the jury to hear evidence as to other offenses not charged in the indictment. For the benefit of the trial court after remand, we discuss two additional contentions which we find to be of no merit: (1) the questioned use by the government of a photographic identification

---

1. The indictment as returned charged Broadway in Count One with violation of Section 2314 on May 26, 1971. Counts Two and Three charged a co-defendant, Means with two similar violations on May 24, 1971. Before appellant's trial, the case was disposed of as to Means by acceptance of a plea of guilty as to Count Two. Count Three was dismissed at the time of Means' sentence, May 5, 1972.

spread, and (2) Broadway's claim that his Sixth Amendment right to a speedy trial was violated by preindictment delay.[2]

On May 4, 1971, two boxes containing four hundred blank Travelers Express Company Inc. (Travelers hereinafter) Money Orders (Nos. 052 3765 601 through 052 3766 000) were delivered to Phillips Grocery in Dallas, Texas. On June 9, 1971 Phillips Grocery discovered that two hundred of the money orders (Nos. 052 3765 801 through 6 000) were missing, and reported the loss to Travelers, which issued a stop payment order.

On May 26, 1971, the appellant George Broadway entered the Uniroyal Merchandising Company in the K Mart Building in Dallas, Texas, and presented Travelers Express Money Order No. 052 3765 939, one of the missing series, made payable to George Broadway in the face amount of $50.00, in payment of a $12.63 bill for merchandise. Broadway endorsed the money order in the presence of Mr. Cleveland Lee, Jr., a Uniroyal employee. As identification, Broadway presented a Western Auto Credit card and a valid Texas Drivers License. The address on the driver's license was 1450 Minuet Lane, Dallas, a home previously owned by defendant's mother, but occupied by others since 1968. A telephone number was furnished by Broadway and written on the back of the money order by Lee. This was the telephone number of an unrelated party. The money order which Broadway presented for payment at Uniroyal was eventually received for payment at the Security National Bank, Faribault, Minnesota in the ordinary course of banking business through interstate commerce. This money order with last three figures of 939 was the money order specified in the indictment under which Broadway was tried. Lee further testified that a day or so earlier he had refused to accept the same or a similar money order tendered by Broadway because of no identification being presented.

Over defense counsel's strenuous objection at trial the government as a part of its case in chief also put in evidence two other similarly made out money orders, Nos. 052 3765 864 and 052 3765 873, both from the series which had disappeared from Phillips Grocery. These were each negotiated near in time to the indictment money order, were payable to George Broadway and bore an endorsement similar to No. 939.[3] The appellant was not identified in either instance as the person who negotiated the money order, but was connected to the endorsements by expert handwriting testimony. The court allowed the additional money orders to be received in evidence as going to proof of intent and guilty knowledge on the part of appellant. The court gave a cautionary instruction to the jury prior to admitting the money orders or permitting testimony about them. The instruction was to the effect that proof of other offenses not alleged in the indictment could not be used to prove the offense charged, but could only be used to determine state of mind or intent.

The handwriting expert testified that the signatures on all three money orders had been made by the same person who had signed other documents which bore signatures stipulated to be appellant's George Broadway. The government

2. The appellant also questions on appeal the sufficiency of the evidence to support the jury's finding of guilty. In view of our reversal for a new trial we will not allude further to this asserted ground of error. The text outlines the evidence to the extent necessary to deal with the other contentions on appeal.

3. Both were dated "5–10–71", both were in the face amount of $87.00, and both were signed in the blank for "Purchaser or Agent,": "Betty Washington, 2516 Houston, San Antonio." The handwritten portions appeared to be written by a different hand from each other and from the indictment money order. As noted in the text the face amount of the indictment money order was $50.00. Its payor (or "purchasers or agent") was "Betty Smith, 1419 Hillbrand, San Antonio."

then, while introducing evidence tending strongly to show that appellant signed money orders 864 and 873 presented no evidence as to who put the money orders into commerce by uttering them. This bears emphasis, for transporting or causing to be transported in interstate commerce is the salient feature of a charge under Section 2314.

■■■ We start with the general rule which is of course that evidence which shows or tends to show commission of crimes not charged is inadmissible in a trial for a particular crime, Weiss v. United States, 5 Cir. 1941, 122 F.2d 675, 682, cert. denied, 1942, 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550. There are recognized exceptions to the rule. Evidence of commission of other crimes closely related in both time and nature to the crime charged may be admitted to establish identity, Halfen v. United States, 5 Cir. 1963, 321 F.2d 556, 558, cert. denied, 1964, 376 U.S. 934, 84 S.Ct. 704, 11 L.Ed.2d 653, guilty knowledge, United States v. Dryden, 5 Cir. 1970, 423 F.2d 1175, 1178, cert. denied, 398 U.S. 950, 90 S.Ct. 1869, 26 L.Ed.2d 290, intent, United States v. Smith, 5 Cir. 1970, 433 F.2d 1266, 1270, cert. denied, 1971, 401 U.S. 977, 91 S.Ct. 1206, 28 L.Ed.2d 328, motive, Huff v. United States, 5 Cir. 1959, 273 F.2d 56, 60, or a common scheme, plan, design or system of criminal activity of which the crime charged is a part, United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152, 1156. The reported cases note dangers in the admission of such other crime evidence to prove elements of the crime charged. Such evidence may severely prejudice the defendant "by the confusion of issues, or the likelihood that the jury may illogically assume that since the defendant has committed one offense he may well, for that reason alone, be guilty of another . . . ." Labiosa v. Government of Canal Zone, 5 Cir. 1952, 198 F.2d 282, 284–285. The strong possibility of prejudice inherent in the use of such evidence has led courts to restrict use of evidence of other crimes. For example, other crime evidence may be received only if the element of the offense which the evidence is introduced to establish is contested, Lovely v. United States, 4 Cir. 1948, 169 F.2d 386, cert. denied, 1949, 338 U.S. 834, 70 S.Ct. 38, 94 L.Ed. 508, and is not established by other uncontroverted evidence relating to the principal offense, United States v. Byrd, 2 Cir. 1965, 352 F.2d 570, 574.

On the issues of intent and guilty knowledge in this trial the government's direct proof was slim. Broadway's defense as it later came in was limited to the contention that while he cashed the money order as charged in the indictment and as testified to by Lee he did not know that it was stolen or forged, and thus proof of the guilty knowledge and intent requisite to a violation of Title 18, U.S.C., Section 2314, were lacking, Hulsey v. United States, 5 Cir. 1966, 369 F.2d 284, 287.

Evidence of the uttering of similar money orders at dates near to those of the charged offense would ordinarily be relevant to establishment of the elements of intent and guilty knowledge otherwise lacking in the government's proof. As the additional money orders came from the same missing series as the indictment money order evidence concerning the other two money orders would tend to show a common scheme or design of criminal activity involving the two hundred missing money orders. Such evidence could demonstrate a pattern of criminal conduct pointing directly toward the act charged, Lovely v. United States, supra, and hence could permit the finder of fact to infer circumstantially the intent and knowledge with which the act charged was committed, c. f., Bishop v. United States, 10 Cir. 1968, 396 F.2d 762, 763.

■■■ But recognition of the legitimate evidentiary purpose served by proof of similar crimes simply underscores the flaw in the proof below. We have had occasion to hold that proof of similar offenses in a situation involving identity must " . . . be clear and that evidence of a vague and uncertain charac-

ter regarding such an alleged offense should not be admitted." Labiosa v. Government of Canal Zone, supra, 198 F.2d at 284–285. There is no Fifth Circuit case fixing standards in the situation where, as here, evidence of other crimes is tendered as proof of intent and guilty knowledge. But the Eighth Circuit has required, in cases where intent or guilty knowledge is sought to be proved by evidence of similar offenses that the proof of other related offenses " . . . be plain, clear, and conclusive, and evidence of a vague and uncertain character is not admissible." United States v. Spica, 8 Cir. 1969, 413 F.2d 129, 131; Kraft v. United States, 8 Cir. 1956, 238 F.2d 794; Gart v. United States, 8 Cir. 1923, 294 F. 66; Paris v. United States, 8 Cir. 1919, 260 F. 529. By the requirement that evidence of other crimes be plain, clear and conclusive, the probative value of the evidence is held to outweigh the possibility of prejudice to the defendant. United States v. Spica, supra, 413 F.2d at 132. We see no valid reason for the rule to differ as to the nature of the proof required between an identity situation as in Labiosa, supra, and a situation where the proof of other offenses is offered to shore up a weak case as to intent and guilty knowledge, as in the case at bar.

Directing our attention once more to the facts here and applying the "plain, clear and conclusive" test, the fatal flaw in the evidence below becomes apparent. Proof of like crimes would consist of proof of transporting similar falsely made or forged securities in interstate commerce, or causing them to be so transported by placing them in the flow of commerce.[4] This was precisely what the government was not able to prove. It simply proved at most that George Broadway placed his true name endorsement on such other securities. Without proof of encashment or passing by Broadway the offenses were no longer similar, assuming that some offense was proved by proof of Broadway's endorsement in the two additional money orders. Proof of such offense, whatever it was, was not proof of a violation of Sec. 2314 or of a similar offense. The essential ingredient of transporting or causing to be transported was lacking.

■ It was prejudicial error requiring reversal of the conviction, to permit the jury to receive this evidence. Upon retrial testimony as to money orders 864 and 873 should not be admitted.

■ Our holding is simply that when proof of an assertedly similar offense is tendered to establish necessary intent, the other offense proved must include[5] the essential physical elements of the offense charged, and these physical elements, but not the mental ingredients of the offenses must be clearly shown by competent evidence. An independent preliminary examination of the proffered evidence, out of the jury's presence should be conducted to determine admissibility under these standards.

■ Appellant further contends that he was denied Fifth Amendment due process of law because agent Lish of the FBI employed a photographic spread

---

4. United States v. Harrison, 5 Cir. 1972, 461 F.2d 1127, relied on by the United States is not apposite. In *Harrison*, we approved the receiving of testimony as to the cashing of other forged money orders not covered by the indictment, in a prosecution under Title 18, U.S.C. Sec. 2314. The defendant there was proved to have actually passed two of the three other crime money orders. Her fingerprint was on the third, and the error in receiving the third money order was held not prejudicial in view of the strong nature of the other proof. This element of the proof as to other offenses was significantly lacking in the case at bar. The difference is critical in our view.

5. Knowledge, intent and the like are typical *mental* elements. These may be inferred by the trier of fact, from the totality of the circumstances, in the same manner in which the trier of fact is entitled to infer such elements in determining guilt or innocence of the offense on trial. Cf. United States v. Hopkins, 6 Cir. 1966, 357 F.2d 14, 18, cert. denied 358 U.S. 858, 87 S.Ct. 107, 17 L.Ed.2d 84.

identification procedure with the witness Lee at a time when Broadway was in state custody and hence readily available for a line-up identification. While a line-up identification may normally be more accurate, Simmons v. United States, 1968, 390 U.S. 377, 386, fn. 6, 88 S.Ct. 967, 972, fn. 6, 19 L.Ed.2d 1247, 1254, fn. 6, the record indicates that the photo spread procedures specified by this Court in United States v. Sutherland, 5 Cir. 1970, 428 F.2d 1152, were followed. The trial court found that the photo spread was not impermissibly suggestive and we see no reason to overturn that finding. Further, the testimony of agent Lish demonstrated that at the time the photo identification was made the investigation had not narrowed itself so as to fix upon Broadway as the accused with concomitant rights to counsel, Cf. Kirby v. Illinois, 1972, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. As the photo spread identification was not impermissibly suggestive, and Mr. Lee's in court identification of Broadway was untainted, appellant's additional contention that he was entitled to a line-up on the day of trial has no merit whatsoever.

 Broadway contends finally that he was denied his right to a speedy trial by reason of pre-indictment delay. The record shows that the alleged offense was committed on May 26, 1971; Broadway was indicted on December 13, 1971, and tried April 6–19, 1972. Agent Lish of the FBI interviewed Broadway in the Dallas City Jail, where he was being held on state charges, on July 9, 19, and 21, 1971. Lee identified Broadway from the picture spread on July 19, 1971. Broadway was not arrested until January 15, 1972 after his indictment was returned on December 13, 1971. Appellant argues that probable cause for his arrest was established no later than July 19, 1971 and that unnecessary delay between that date and the indictment date unduly prejudiced him. Although the FBI special agent in charge of the investigation testified that he was investigating 200 stolen money orders at the same time, and although the appellant was in state custody on other charges between July and December, he asserts that a hold should have been placed on him earlier, and that he was prejudiced by this delay in some unspecified way. There is no merit to this point. The Sixth Amendment right to speedy trial accrues only when a defendant becomes an accused, either through arrest, indictment, or information; the applicable statute of limitations is the usual safeguard against pre-indictment delay, United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. See further, Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 30 L.Ed.2d 101. Appellant's generalized allegations of loss of witnesses, loss of witness memory, and his own indigency are insufficient to show prejudice. Cf. United States v. Judice, 5 Cir. 1972, 457 F.2d 414, 418.

The first point discussed, improper admission of evidence tending to show commission of other offenses, requires reversal for a new trial.

Reversed and remanded.