**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Billy Ray HUFF, Defendant-Appellant.**

No. 74–2834.

United States Court of Appeals, Fifth Circuit.

April 28, 1975.

68

P. Bruce Kirwan, Federal Public Defender, J. Hue Henry, Asst. Federal Public Defender, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., James E. Baker, Gale McKenzie, Asst. U. S. Attys., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

MURRAH, Circuit Judge:

Appellant Huff was indicted, tried, convicted, and sentenced, on two counts for offenses enumerated in 21 U.S.C. § 841(a)(1). Count I charged that Huff alone "on the 15th day of January 1974 . . . did unlawfully distribute about one and one-half (1½) grams, net weight, more or less, of 3,4 methylenedioxy amphetamine, a Schedule I controlled substance." Count II charged that Huff and five others "on the 17th day of January, 1974 . . . did unlawfully possess, with intent to distribute about 449 grams, gross weight, more or less, of methylenedioxy amphetamine, a Schedule I controlled substance." After guilty pleas by three of those charged, Huff and two codefendants proceeded to trial, where they argued, by motions to acquit and by appropriate objections to instructions, that Count II does not charge a crime and is void, because "methylenedioxy amphetamine," as distinguished from "3,4 methylenedioxy amphetamine," is not a controlled substance the possession of which is prohibited by law. The trial court rejected this argument, telling the jury that the words "methylenedioxy amphetamine" in Count II "should be described as 3,4 methylenedioxy amphetamine, the same substance as described in Count One" and with this observation, submitted both counts.

On appeal, Huff reasserts his contention with respect to Count II and argues that the evidence on this void Count II infected his trial on Count I. We agree that Count II is fatally defective and reverse the conviction as to that count. But we do not think the evidence on Count II prejudiced his trial on Count I, and the conviction on Count I is affirmed. For reasons hereafter stated, however, we remand for resentencing.

The basis for Huff's conviction on both counts was evidence from undercover drug agents who testified concerning purchase from Huff and confiscation from his codefendants' apartment of a substance commonly known to drug purveyors as "M.D.A." The chemical definition of this substance is "3,4 methylenedioxy amphetamine," and it is so designated in the list of controlled substances

* Senior Circuit Judge of the Tenth Circuit sitting by designation.

in the statute. 21 U.S.C. § 812, Schedule I(c)(1). According to testimony by the government's chemists, "methylenedioxy amphetamine" is a different drug; and nowhere in the statute is it listed as a controlled substance.

The prosecution admits that the substance was misdescribed in Count II. But it contends that this was merely a typographical error and that Count II, when read together with Count I as part of the entire indictment, meets the required test of sufficiently apprising Huff of the charge against him and protecting him against double jeopardy. In support of its argument, it cites cases from this and other Circuits. United States v. Miller, 491 F.2d 638 (5th Cir. 1974); Robbins v. United States, 476 F.2d 26 (10th Cir. 1973); United States ex rel. Harris v. Illinois, 457 F.2d 191 (7th Cir. 1972), cert. denied, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972); United States v. Driscoll, 454 F.2d 792 (5th Cir. 1972); United States v. Farber, 306 F.Supp. 48 (N.D.Cal.1969). In all these cases the test was satisfied, because the indictment charged a crime slightly different but closely related to the one on which proof was offered.

 Federal Rules of Criminal Procedure 7(c) states that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Courts have generally understood and implemented this rule so as to let common sense rather than mere technicalities govern the determination of the sufficiency of an indictment. But even a liberal construction of this simple rule does not dispense with the requirement that an indictment or each count thereof allege all the essential elements of an offense. United States v. Clark, 412 F.2d 885, 891 (5th Cir. 1969). To be sure, "[a]llegations made in one count may be incorporated by reference in another count." Fed.R. Crim.P. 7(c). But each count of an indictment must be regarded as if it were a separate indictment and must stand on its own content without dependence for its validity on the allega-

tions of any other count not expressly incorporated. See Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932); United States v. Greene, 497 F.2d 1068 (7th Cir. 1974); United States v. Roberts, 465 F.2d 1373 (6th Cir. 1972). Here, the challenged count of the indictment alleges nothing more than an act which is legal. And such a failure to allege a crime cannot be remedied by proof or curative instructions which attempt to incorporate other counts not expressly referred to in the challenged count. A grand jury indictment may be amended only by resubmission to a grand jury, "unless the change is merely a matter of form." Russell v. United States, 369 U.S. 749, 770–771, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Stirone v. United States, 361 U.S. 212, 215–217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

The addition of the numbers "3,4" would have indeed saved this count, but we cannot regard this defect as a mere technicality, for the chemical and legal definition of these substances is itself technical and requires precision. In sum, the variance between non-criminal conduct, as alleged in Count II, and criminal conduct, which the government attempted to prove under Count II, rises above the level of form, however minute the omission may have been. See Van Liew v. United States, 321 F.2d 664, 670–674 (5th Cir. 1963). The conviction on Count II must be reversed.

██ In support of his contention that the evidence on Count II fatally infected Count I, Huff refers to the rule excluding evidence of crimes not charged. And see United States v. Broadway, 477 F.2d 991 (5th Cir. 1973); United States v. Abshire, 471 F.2d 116 (5th Cir. 1972). But these cases specifically recognize the well established exceptions for evidence of a "system of criminal activity of which the crime charged is a part" and "elements of the crime charged." United States v. Broadway, supra, at 994 of 477 F.2d. See also United States v. Bryant, 490 F.2d 1372 (5th Cir. 1974);

United States v. Smith, 433 F.2d 1266, 1270 (5th Cir. 1970); United States v. Sutherland, 428 F.2d 1152, 1156 (5th Cir. 1970). The evidence presented with regard to Count II (possession with intent to distribute) could properly show, as to Count I (distribution), a systematic criminal activity or the required elements of possession and intent. The relevance of such evidence is particularly clear because Huff's entrapment defense on Count I highlighted the elements of intent and predisposition. And we think "the probative value of the evidence . . . outweigh[s] the possibility of prejudice to the defendant." United States v. Broadway, supra, at 995 of 477 F.2d. As we said in United States v. Meriwether, 486 F.2d 498, 504 (5th Cir. 1973): "Whenever a defendant is tried on a multi-count indictment there is the possibility that the jury will infer guilt on all counts from guilt on one of the individual counts, but this danger has not led us to abandon the practice of using multi-count indictments in proper circumstances." The trial court here clearly charged the jury that each count must be considered "independently of the other"; and Huff does not challenge the sufficiency of the evidence as to Count I. We conclude that the evidence admitted pursuant to Count II did not prejudice Huff's trial on Count I, and the conviction on Count I is affirmed.

■ The appellant attached to his brief an ex parte "memorandum" formally addressed to the trial judge from the Assistant United States Attorney on the subject "Billy Ray Huff—Government's Sentencing Recommendation in Criminal No. 74–55." After sentencing, this memorandum was discovered in the court clerk's file where it was an undocketed and apparently inadvertent inclusion. The instrument was not a part of the record, nor was it certified here. There is no actual proof that the trial judge received it or considered it, but the government does not deny submitting it. And no one suggests that it was ever brought to the attention of the defendant or his counsel before or at the time of sentencing. And the government has defended it here, as if it were accepted practice. We will, accordingly, take note of it, and we emphatically disapprove it, as a prejudicial and impermissible ex parte communication between government counsel and the court.

The memorandum recalled Huff's conviction on the two counts and the maximum penalty of thirty years or $50,000 or both. The memorandum then proceeded to state the following: (1) the prosecution's recommendation of a "sentence of at least four years;" (2) a statement concluding that Huff was "experienced in drug dealing" and seemed "familiar with illicit action and the necessary coverup techniques," based upon his monitoring of police radio and his telephonic techniques, as testified at trial; (3) a statement concluding that "there is no excuse of any nature to justify a 30 year old man using both a 13 year old girl and a 17 year old girl to sell his drugs so that he can simply make a profit" and that he induced the girls to use the drugs, based upon testimony at trial that the girls helped him sell drugs and an account given by one of the girls at a hearing in her own separate case before the same trial judge and at which Huff's attorney served as the girl's attorney; (4) a statement that Huff "hung out with the well known pushers" at a recreation center and "appear[ed] to distribute drugs" near his apartment, based upon no positive testimony but related to matters on which Huff was questioned by the prosecutor; and (5) a statement that county drug agents have, for a year, had information naming Huff as a drug dealer, based upon no information contained in the record. The prosecution argues that this was not improper because "All [of the items in the memorandum] were dealt with on the record." As we have seen, only some of the underlying data was in the record; and the memorandum went beyond the data to suggest what conclusions should be drawn. Other parts of the memorandum were taken from a collateral proceeding and were thus not subject to answer by

Huff; and some parts had no basis at all in the record.

 The sentencing is, of course, a critical stage of the proceedings against the accused, at which he is constitutionally entitled to be present and represented by counsel. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). While recognizing the limits upon appellate review of the length of sentences, this Court has recognized, "It is our duty to insure that rudimentary notions of fairness are observed in the process at which sentence is determined." United States v. Espinoza, 481 F.2d 553, 558 (5th Cir. 1973). If the exclusive source of the presentence report is the probation officer, we have taken care to note that the defendant's right under Fed.R.Crim.P. 32(c)(2) to see and rebut the information is not absolute but is within the discretion of the sentencing judge. United States v. Frontero, 452 F.2d 406 and cases cited at 410 (5th Cir. 1971). Where the defendant was denied the opportunity to rebut prejudicial pre-sentence material the source of which is not identified or verified by the probation officer, and which is relied upon by the sentencing judge, we have vacated sentence and remanded for resentencing. Shelton v. United States, 497 F.2d 156 (5th Cir. 1974); United States v. Espinoza, supra; United States v. Battaglia, 478 F.2d 854 (5th Cir. 1972). And where a pre-sentence memorandum is submitted by the prosecution rather than the probation officer, other Circuits have required disclosure and opportunity to rebut. See Haller v. Robbins, 409 F.2d 857 (1st Cir. 1969) (remand for rehearing to develop evidence as to the truth of the allegations in the prosecution's pre-sentence ex parte communication); United States v. Solomon, 422 F.2d 1110 (7th Cir. 1970) (formulation of prospective rule requiring disclosure to the defendant of prosecution's pre-sentence memorandum);

United States v. Rosner, 485 F.2d 1213 (2d Cir. 1973) (remand for resentencing by a newly drawn judge, when the original sentencing judge had received ex parte a pre-sentence memorandum from the prosecution and had not disclosed the voluminous contents to the defendant until immediately before announcement of the sentence). As Judge Bailey Aldrich put it in Haller v. Robbins, supra, at 859 of 409 F.2d:

> "While the court is entitled to a report of the criminal conduct charged, there is no practical necessity for such to be made by the prosecutor ex parte. Moreover, not only is it a gross breach of the appearance of justice when the defendant's principal adversary is given private access to the ear of the court, it is a dangerous procedure."

The memorandum went beyond the record, and more importantly, the manner of its submission deprived the defendant of his fundamental due process right to hear and rebut all that the prosecution has to say against him bearing on the judgment of sentence. Cf., United States v. Howard, 506 F.2d 865 (5th Cir. 1975).

The judgment of sentence is accordingly vacated, and the case is remanded for resentencing by a redrawn judge, at which time the government may, with the permission of the court, offer the memorandum as an argument for the length of the sentence to be imposed. The defendant will, of course, be afforded an opportunity to rebut, without an evidentiary hearing. See Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). We make no suggestion regarding the appropriate sentence.

As to Count I, the conviction is affirmed, the sentence vacated, and the case remanded for resentencing in conformity with this opinion. As to Count II, the judgment is reversed.